State ex rel. Smith, Appellant, vs. Dean, City Clerk, Respondent.

*January 12—April 3, 1923.*

*Municipal corporations: Cities of the fourth class: Minor officers: Appointment or election: Establishment of method: Change.*

1. Under sub. (3) 3, sec. 62.09, Stats. 1921, providing two ways of choosing minor officers of a city of the fourth class, a petition signed by more than thirty per cent. of the electors was filed for the elective method of choosing minor officers in the same manner as other elective officers. Two days later, under the same subsection of the statutes, another petition, signed by a majority of the electors, was filed with the city clerk, requesting the mayor and common council to pass an ordinance making all minor city officers appointive by the mayor, subject to confirmation by the council, and in response to the latter petition the council enacted an ordinance making all the minor officers appointive. *Held,* that the ordinance passed after the filing of the second petition established the appointive system for the election of the specified officers in said city.

[2. *Quære,* whether such system will prevail in the city until changed by legislative action?]

    Vinje, C. J., and Eschweiler, J., dissent.

Appeal from a judgment of the municipal court of Outagamie county: Albert M. Spencer, Judge. *Affirmed.*

The city of Seymour is a city of the fourth class operating under the general charter law. On the 16th day of March, 1922, a petition, signed by more than thirty per

cent. of the electors of the city, was filed with the city clerk requesting that the chief of police, city health officer or the city physician, and the city attorney be elected by the people at the general city election in the same manner as other elective city officers.

On the 18th day of March, 1922, another petition, signed by a majority of the electors in the city of Seymour, was filed with the city clerk, petitioning the mayor and common council to pass an ordinance making all city officers, except those which the law requires to be elected by the people, appointive by the mayor, subject to confirmation by the council. In response to the latter petition the council, on the 20th day of March, 1922, enacted an ordinance making all officers of the city, except mayor, clerk, treasurer, alderman, supervisors, and justice of the peace, appointive by the mayor, subject to confirmation by the council. This ordinance was published in the official paper on the 30th day of March, 1922.

The city clerk having neglected and refused to give notice of the election of city officers at the annual city election to be held on April 4, 1922, the municipal court of Outagamie county issued an alternative writ of *mandamus* on March 21, 1922, upon the petition of relator, ordering "that he [the city clerk], immediately after receipt of this writ, give notice of the time and place of the election of such officers, or in default thereof he show cause, etc., why he has not done so." The city clerk made return to the writ, stating, in substance, that he had failed and refused to give notice of the election of the city officers mentioned in the first petition because of the filing of the second petition and the enactment of the ordinance above mentioned, which he claimed nullified the effect of the first petition.

The petitioner demurred to the return. Thereafter, and on the 27th day of March, the municipal court overruled the demurrer and entered judgment quashing the writ. From such judgment petitioner brings this appeal.

For the appellant the cause was submitted on the brief of *E. C. Smith* of Seymour, *in pro. per.*

For the respondent there was a brief by *Walter T. Bie,* city attorney of the city of Seymour, and *Fairchild, North, Parker & Bie* of Green Bay, of counsel, and oral argument by *Jerome R. North.*

The following opinions were filed February 6, 1923:

OWEN, J.    Sub. (3) of sec. 62.09, Stats., reads:

"(3) *Manner of choosing.* (a) The mayor, treasurer, comptroller or officer performing the duties of comptroller, aldermen, supervisors and justices of the peace shall be elected by the voters.   In case the whole number of justices of the peace provided for by this subsection shall not have been elected, the mayor of such city may appoint the remaining number of justices who shall hold their offices until the first of May following the next succeeding judicial election.

"(b) The other officers shall be selected in the manner in force at the time of the enactment of chapter 62 of the statutes until the method of their selection shall be changed in the manner following:

"1. The council may fix the method of their selection by ordinance approved by the electors.   Such ordinance may provide for appointment by the mayor only upon confirmation by the council.

"2. The council shall submit the question of changing the method of selection of any such other officer upon petition therefor by fifteen per cent. of the electors, and if a majority of the electors voting thereon vote for the method specified in such petition such officer shall thereafter be so selected.

"3. In cities of the fourth class, upon petition therefor by thirty per cent. of the electors filed with the clerk not less than fifteen days before any regular city election, any such other officer shall be elected by the people at the succeeding election and thereafter.   Upon like petition signed by a majority of the electors the council may by ordinance provide for appointment by the mayor subject to confirmation by the council."

State ex rel. Smith v. Dean, 180 Wis. 202.

The city of Seymour is a city of the fourth class, and the question here presented involves the construction of par. 3 of sub. (3) above quoted. It will be noted that it provides for two petitions, one by thirty per cent. of the electors, the other by a majority. The filing of the thirty per cent. petition requires the election of the minor city officers. Upon the filing of the petition signed by a majority of the voters "the council may by ordinance provide for appointment by the mayor subject to confirmation by the council." In the instant case the thirty per cent. petition was filed on March 16th. Two days later a majority petition was filed pursuant to which an ordinance was duly adopted and published on the 23d day of March providing the appointive method. Under these circumstances, how were the minor city officers of the city of Seymour thereafter to be chosen?

The statutory provision involved is certainly confusing. The result would be plain if only one petition were filed. But it is not entirely clear whether the legislature intended that the petition first filed, or the majority petition, should settle the matter, or whether the manner of choosing these officers should change with the filing of alternate petitions month after month or year after year. The statute is susceptible to the construction that one petition may be filed after another, resulting in chaos and confusion, but it is difficult to believe that such was the legislative intent. Such a possibility could give rise to a most unusual if not absurd situation, and we are not disposed to hold that it was the legislative purpose to permit thirty per cent. of the electors to nullify the will of the majority after a method of selecting officers has once been established in obedience to the desires of a majority of the electors.

It seems to have been the legislative purpose to construct a plan by which the manner of choosing minor city officers should accord with the desires of the electors of a given city based on local situations and necessities. In recognition of

the democracy involved in the popular choice of city officers, provision is made for their election if thirty per cent. of the electors should indicate a desire that such officers be so chosen. However, in recognition of a common belief, evidenced not only by the provisions of the general charter law but by the provisions of a great majority of special city charters, that the appointment of such minor officers is in accordance with a better public policy, their appointment is authorized when a majority of the electors petition therefor, and when, after such petition, the common council sees fit to enact an ordinance so providing. The legislative plan is: 1. To permit thirty per cent. of the voters to invoke the elective method. 2. This method, however, is not to obtain if (a) it be disapproved by a majority of the electors so expressing themselves in the form of a petition; and (b) the common council, by ordinance, provide for the appointive system.

The ordinance published March 23, 1922, established the appointive system for the selection of city officers in the city of Seymour. A writ of *mandamus* compelling the city clerk to give notice of the election of such city officers at the ensuing city election could not issue. The alternative writ was therefore properly quashed, and the judgment should be affirmed.

The thought naturally arises whether the appointive system of selecting city officers is now permanently intrenched in the city of Seymour until changed by legislative action. To those who may be interested in this question, we suggest a consideration of paragraph 2 above quoted, without assuming to indicate whether the method therein provided may be made operative to change the system now established in that city. At any rate, it cannot be changed by a thirty per cent. petition.

*By the Court.*—Judgment affirmed.

VINJE, C. J. (*dissenting*). I construe paragraph 3 of sub. (3) of sec. 62.09, Stats., relating to cities of the fourth

class, to mean that upon a petition of thirty per cent. being seasonably filed asking for the election of the proper officers therein specified, such officers shall be elected at the succeeding election and thereafter, until changed to appointment by a petition of a majority of the electors and by ordinance of the council. That is what the statute says and I think that is what it means. Pursuant to its provisions there must be at least one election held where a proper petition therefor is timely filed before there can be a change to an appointive system, and likewise at least one appointment made where a proper petition and ordinance therefor exist before there can be a change to an elective system. There seems to be no provision for one petition superseding another without a change being effected by the first. It was no doubt the legislative thought that in such small cities as those of the fourth class it could be safely left to the electors to choose from time to time the method best suited to their then needs, and that a choice once made was not irrevocable.

I am authorized to state that Mr. Justice ESCHWEILER concurs in this dissent.

A motion for a rehearing was denied, with $25 costs, on April 3, 1923.